**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Andwrius Alberto Garcia-Bolivar,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

No. CV-26-02547-PHX-MJM (DMF)

**ORDER**

Petitioner Andwrius Alberto Garcia-Bolivar filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.) The Court ordered Respondents to show cause why the Petition should not be granted (Doc. 6). Respondents filed a Response (Doc. 10), and Petitioner filed a Reply and Notice of Supplemental Authority (Doc. 18).

Respondents' own charging document establishes that Petitioner was not paroled into the United States under 8 U.S.C. § 1182(d)(5). Respondents nonetheless re-detained him after more than three and a half years of release without any hearing before a neutral decisionmaker. The Court will therefore grant the Petition and order Petitioner's release.

## I. Background

Petitioner is a native and citizen of Venezuela. (Doc. 1 at 4; Doc. 10-1 at 1.) Respondents' records reflect that he entered the United States on July 1, 2022, and was encountered by U.S. Customs and Border Protection near Eagle Pass, Texas. (Doc. 10 at 1, 3; Doc. 10-1 at 1, 3.) Respondents assert that Petitioner was "paroled through Eagle

Pass Texas and given Alternatives to Detention conditions," and that he "was not then placed into proceedings." (Doc. 10 at 1, 3.)

Neither party has produced a parole document. The only description of the release in Respondents' exhibits is a line in the Form I-213 stating that Petitioner was "[p]aroled into the U.S. through Eagle Pass Station in Texas on 7/01/2022 under the Temporary Protective Status (TPS)." (Doc. 10-1 at 3.) Petitioner's exhibit labeled as parole documentation is a Form I-385 Alien Booking Record reflecting his apprehension on July 1, 2022. (Doc. 1 at 26-27.)

Following his release, Petitioner filed an affirmative application for asylum and withholding of removal with U.S. Citizenship and Immigration Services ("USCIS") on June 8, 2023. (Doc. 1 at 25.) USCIS also approved his application for employment authorization under the category for asylum applicants, valid through December 10, 2028. (*Id.* at 29.) USCIS granted him Temporary Protected Status ("TPS") on April 18, 2024, valid through April 2, 2025. (*Id.* at 31.) Respondents' records indicate that the TPS case was terminated on November 20, 2025. (Doc. 10-1 at 3.)

Respondents' records reflect that Petitioner has no criminal history. (Doc. 10-1 at 3.) Respondents do not contend that he violated any condition of his release. On March 5, 2026, immigration officers stopped Petitioner's vehicle in Mesa, Arizona, and took him into custody. (Doc. 10-1 at 1-2; Doc. 1 at 20.) The parties dispute what happened. Petitioner attests that five men who did not identify themselves as officers or display a warrant handcuffed him, drove him to an industrial area, and only then contacted ICE. (Doc. 1 at 20.) Respondents' records state that the arrest was a targeted enforcement operation, that the officers wore body armor with visible identifiers and identified themselves, and that a Form I-200 Warrant for Arrest of Alien had been generated before the operation. (Doc. 10-1 at 2; Doc. 10-2 at 1.)

Petitioner was taken to the ICE Phoenix Field Office. Respondents then served him with a Notice to Appear ("NTA") placing him in removal proceedings under 8 U.S.C. § 1229a. (Doc. 10-3 at 1-2.) The NTA form offers three boxes for designating the

respondent's status. DHS did not check the box designating Petitioner as "an arriving alien." (*Id.* at 1.) It checked the box designating him as "an alien present in the United States who has not been admitted or paroled." (*Id.*) Consistent with that designation, DHS alleged that Petitioner "entered the United States at an unknown location, on an unknown date," and "w[as] not then admitted or paroled after inspection by an Immigration Officer." (*Id.*) DHS then charged Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled," and under § 1182(a)(7)(A)(i)(I), as an immigrant without valid entry documents. (*Id.* at 4; *see also* Doc. 10-1 at 2.)

Petitioner appeared for an initial master calendar hearing on March 31, 2026. (Doc. 10 at 2.) He represents that an immigration judge denied his applications for relief on or about May 27, 2026, and that his appeal to the Board of Immigration Appeals ("BIA") is pending. (Doc. 18 at 1-3; *see* Doc. 16.) Petitioner has been detained since March 5, 2026, which is more than eight months.

## II. Discussion

Petitioner asserts that Respondents violated the Due Process Clause of the Fifth Amendment by taking him back into custody years after releasing him, without any individualized determination by a neutral decisionmaker that his detention is warranted. (Doc. 1 at 3, 8-11; Doc. 18 at 4-5.) Respondents make three arguments on that claim: (1) Petitioner was paroled under 8 U.S.C. § 1182(d)(5); (2) he has no protected liberty interest because that parole expired; and (3) he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. 10 at 3-5.) Respondents also contend that the arrest was supported by a warrant. (*Id.* at 2-3.)

### A. Petitioner Was Not Paroled Under § 1182(d)(5)

Each of Respondents' principal arguments depends on one premise: that Petitioner was paroled into the United States under § 1182(d)(5) in July 2022. (Doc. 10 at 1, 3-4.) That provision permits the Executive, in its discretion, to "parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant

public benefit any alien applying for admission." 8 U.S.C. § 1182(d)(5)(A). When the purposes of the parole have been served, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled." *Id.* Respondents reason that Petitioner's parole has expired, so he has no liberty interest in his release, *see Wong v. INS*, 373 F.3d 952, 967-68 (9th Cir. 2004). In their view, he has also reverted to the status of an applicant for admission subject to mandatory detention. (Doc. 10 at 3-5.)

But the record does not support that premise, and Respondents' own charging document contradicts it. When DHS initiated removal proceedings, it designated Petitioner as "an alien present in the United States who has not been admitted or paroled," declined to designate him an "arriving alien," alleged that he "w[as] not then admitted or paroled after inspection," and charged him under § 1182(a)(6)(A)(i), the ground of inadmissibility for a noncitizen "present in the United States without being admitted or paroled." (Doc. 10-3 at 1, 4.) Respondents' position in this Court cannot be reconciled with the allegations DHS has pursued in Petitioner's removal proceedings. Before the immigration court, DHS maintains that Petitioner entered at an unknown place and time and was never paroled. And before this Court, Respondents maintain that he was paroled at Eagle Pass under § 1182(d)(5) and is subject to the consequences of that parole's expiration. They cannot hold both positions. And nothing else in the record supports Respondents' position; they have produced no parole document and no record identifying the authority for any parole, its duration or conditions, or when or how it expired. None of their own forms identify § 1182(d)(5) as the source of Petitioner's parole. And the INA separately authorizes release on "conditional parole" under 8 U.S.C. § 1226(a)(2)(B), which is distinct from parole under § 1182(d)(5). *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007).

On this record, the Court finds that Petitioner was not paroled under § 1182(d)(5). Whatever label immigration officials attached to his release in July 2022, DHS has formally alleged that he was never paroled. Respondents offer nothing to support the contrary position they take here.

**B. Section 1226(a), Not § 1225(b)(2)(A), Governs Petitioner's Detention**

Because Petitioner was not paroled under § 1182(d)(5), Respondents' argument that his parole's expiration returned him to mandatory custody under § 1225(b) fails. Respondents' broader contention is that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) because he is an "applicant for admission." (Doc. 10 at 4-5.) Binding Ninth Circuit precedent forecloses that contention. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the Ninth Circuit addressed the Government's argument that every noncitizen whom § 1225(a)(1) deems an "applicant for admission" is "seeking admission." Under that argument, every such noncitizen would be subject to mandatory detention under § 1225(b)(2)(A). The court rejected it. *Id.* at 1175. The Ninth Circuit held that § 1225(b)(2)(A) "is best construed as applying to aliens entering the United States at the border" and § 1226 "is best understood as governing inadmissible and deportable aliens present in the interior of the United States." *Id.* at 1172. Further, "seeking admission" requires that the noncitizen "be engaged in the affirmative process of attempting to gain 'entry' 'into' the country, which an alien does at the border (or a port of entry)." *Id.* at 1174. The deeming provision in § 1225(a)(1) does not place a noncitizen in a "perpetual state" of seeking admission. *Id.* at 1178.

Petitioner was not seeking admission when he was arrested. He was stopped while driving in Mesa, Arizona, more than three and a half years after he entered the United States. (Doc. 10-1 at 1-2.) He was not at the border, not presenting himself for inspection, and not attempting to enter the country. Under *Rodriguez Vazquez*, § 1226(a) governs Petitioner's detention.

**C. Petitioner Was Entitled to a Hearing Before He Was Re-Detained**

**1. Petitioner Has a Protected Liberty Interest**

Respondents' argument that Petitioner lacks a liberty interest rests on the premise that his release was § 1182(d)(5) parole. (Doc. 10 at 3-4.) *Wong* held that the petitioner there failed to state a claim that she had a liberty interest in temporary parole protected by the Fifth Amendment. 373 F.3d at 967-68. Because Petitioner was not paroled under §

1182(d)(5), *Wong* and Respondents' out-of-circuit authorities are inapposite.

Freedom from bodily restraint lies "at the core of the liberty protected by the Due Process Clause," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and that protection extends to noncitizens, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Once the Government releases a person from custody, the conditional liberty it has granted is itself protected. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Courts have applied that principle to noncitizens released from immigration custody and later re-detained. *See, e.g.*, *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1151-52 (E.D. Cal. 2025); *Aguirre Solis v. Noem*, No. 2:26-cv-00053-RFB-EJY, 2026 WL 396432, at *2, *5 (D. Nev. Feb. 12, 2026); *Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *9 (W.D. Wash. Mar. 12, 2026).

Petitioner lived at liberty for more than three and a half years. During that time he applied for asylum, obtained employment authorization and TPS, and, by his unrebutted account, complied with every reporting requirement. (Doc. 1 at 25, 29, 31; Doc. 18 at 3.) He has no criminal history, and Respondents do not contend that he violated any condition of his release. (Doc. 10-1 at 3.) He has a protected liberty interest in his continued release.

**2. The *Mathews* Factors**

Each of the three *Mathews* factors favors Petitioner. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, Petitioner's interest in freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality opinion). His years at liberty heighten that interest. Second, the risk of erroneous deprivation is high. Civil immigration detention is justified only by danger or flight risk. *Zadvydas*, 533 U.S. at 690. Yet no neutral decisionmaker has ever considered either. An immigration officer issued the I-200 warrant, and it finds only probable cause of removability. (Doc. 10-2 at 1.) And Respondents maintain that Petitioner is ineligible for bond. The only changed circumstance Respondents identify is the termination of his TPS case, which says nothing about danger or flight. (Doc. 10 at 1.)

Third, the Government's interest in re-detaining Petitioner without a hearing is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Custody hearings impose "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). This was a planned operation preceded by surveillance and a warrant (Doc. 10-1 at 2), so a pre-deprivation hearing was feasible. Petitioner was therefore entitled to a hearing before a neutral decisionmaker before he was re-detained. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). Even on Respondents' account, the warrant does not supply that process, so the Court need not resolve the parties' dispute about the manner of the arrest.

**D. Remedy**

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Release is the appropriate remedy here. The constitutional violation is not merely that Petitioner has gone without a bond hearing since his arrest. It is that Respondents took him back into custody without the hearing that due process required beforehand. A bond hearing now would not cure that violation. Petitioner would remain in custody that was unlawfully imposed, and he would have to seek release from inside detention. That would turn the hearing the Constitution required before the deprivation into one that follows it. Release restores the status quo that existed before the unlawful re-detention, and it is the remedy other courts have ordered in these circumstances. *See Aguirre Solis*, 2026 WL 396432, at *5 (ordering immediate release); *Tinoco*, 2025 WL 3567862, at *7 (same).

Because Petitioner will be released, his request that Respondents be barred from transferring him outside this District (Doc. 18 at 7) is moot. Because Petitioner is entitled to release on his due process claim, the Court does not reach his remaining arguments,

including his challenge to the manner of his arrest.

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted**.

**IT IS FURTHER ORDERED** that Respondents must immediately release Petitioner from custody under the same conditions that existed before his re-detention on March 5, 2026.

**IT IS FURTHER ORDERED** that Respondents must file a notice of compliance within two (2) business days of Petitioner's release.

**IT IS FINALLY ORDERED** that any pending motions are denied as moot, and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

IT IS SO ORDERED.

DATED this 20th day of November, 2026.

Michael J. McShane
United States District Judge